UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: RICK L. HOWE,                                                    No. 7-05-20279 MA

    Debtor.
_____

BARBARA H. CRUM,

    Plaintiff,

v.                                                                      Adversary No. 06-1095 M

RICK L. HOWE,

    Defendant.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Plaintiff Barbara Crum's Motion for Summary Judgment ("Motion"). In support of the Motion, Plaintiff filed a memorandum which attached several exhibits, including the affidavit of Plaintiff Barbara Crum. At issue is whether certain debt designated as "lump sum (single sum) spousal support (alimony)" in a Marital Settlement Agreement entered into by Plaintiff and Defendant is non-dischargeable under 11 U.S.C. § 523(a)(5).[1] Defendant filed a response in opposition to the Motion, asserting that material facts preclude summary judgment and that Plaintiff's Motion fails to address all required elements for a determination of non-dischargeability under 11 U.S.C. § 523(a)(5). Defendant also filed an affidavit in support of his response in opposition to the Motion. Plaintiff filed a reply to Defendant's response, asserting that the unambiguous terms of the agreement between the parties

---

[1] Plaintiff's claims for non-dischargeability under 11 U.S.C. § 523(a)(15) were dismissed by stipulation. *See* Stipulated Order on Motion to Dismiss (Docket # 12).

1

as well as the factors relevant to a determination of whether the debt is in the nature of support establish that the debt at issue is a support obligation that is non-dischargeable under 11 U.S.C. § 523(a)(5).[2] Upon review of the Motion, the response in opposition, and the reply thereto, the Court finds that genuine issues of material fact preclude summary judgment. Accordingly, the Court will deny the Motion.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7056, Fed.R.Bankr.P. The moving party bears the burden of proving that there are no genuine issues of material fact that would preclude summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether genuine issues of material fact preclude summary judgment, the Court will construe the evidence in the light most favorable to the party opposing summary judgment. *Jenkins v. Wood,*

---

[2]Defendant has since filed a motion seeking to supplement his response with a transcript from a hearing held on June 18, 2001 in the Second Judicial District Court Cause No. D-202-DM-9803231. (*See* Defendant's Motion to Supplement Response to Plaintiff's Motion for Summary Judgment ("Motion to Supplement"); Docket # 77). The Motion to Supplement attaches a complete copy of the transcript from the hearing held June 18, 2001, and states that Defendant has included the transcript from the hearing in his list of trial exhibits. Because the Court finds that genuine issues of material fact exist based on the Motion, the Defendant's response thereto, and the Plaintiff's reply, the Court will not consider the transcript attached to the Motion to Supplement. The Motion to Supplement will, therefore, be denied.

2

81 F.3d 988, 990 (10th Cir. 1996).

The following facts are not in dispute:

1.  Plaintiff and Defendant were married in June 1991.

2.  Plaintiff and Defendant did not have any children during their marriage.

3.  Prior to Defendant's marriage to Plaintiff, Defendant opened a business named Howe Electric, Inc. Defendant held a 100% interest in Howe Electric, Inc.

4.  During the marriage, Plaintiff worked as the office manager for Howe Electric, Inc., and received a salary and benefits as follows:

    | 1995 | $43,762 |
    | 1996 | $49,500 |
    | 1997 | $57,500 |

    *See* Affidavit of Rick Howe, Defendant's Exhibit A.

5.  In 1998, Defendant sold Howe Electric, Inc. To HEI, Inc. for the sum of $1,450,000.00. In connection with that transaction, HEI, Inc. executed and delivered a promissory note to Howe Electric, Inc. which provided for monthly payments of $14,706.87 for fifteen years until paid in full. *See* Exhibit 1 to Defendant's Affidavit, Defendant's Exhibit A.

6.  The parties decided to dissolve their marriage in 1998.

7.  During the dissolution of marriage proceedings, the parties exchanged several drafts of a Marital Settlement Agreement before the final version of the agreement was approved by both parties.

8.  On May 20, 1999, Plaintiff and Defendant entered into a Marital Settlement Agreement ("MSA"), which provided, in relevant part:

    > Husband [Defendant] shall pay wife [Plaintiff] lump sum (single sum) spousal support (alimony) in the amount of $388,700.00 to be paid as follows: 169

3

payments of $2,300.00 per month, beginning with the month of May 1999 and continuing through the month of May 2013. These payments are subject to Wife [Plaintiff] being alive to receive them and therefore terminate with the May 2013 payment or upon Wife's [Plaintiff] death, whichever occurs first. The payments shall be deductible to husband for income tax purposes and taxable to wife for income tax purposes.

*See* Plaintiff's Exhibit A, ¶ 8.[3]

9. A Decree of Dissolution of Marriage ("Final Decree") which incorporated the terms of the MSA was entered in Second Judicial District Court Cause No. D-202-DM-9803231 ("State Court Dissolution Proceeding") on May 21, 1999. *See* Plaintiff's Exhibit B.

10. The MSA required Defendant to provide Plaintiff security for the payment of the amounts awarded to Plaintiff under the MSA. *See* Plaintiff's Exhibit A, ¶ 8.

11. After the entry of the Final Decree, Defendant referred to the obligation in paragraph 8. of the MSA as either spousal support or alimony in documents filed in the State Court Dissolution Proceeding. *See* Plaintiff's Exhibits D, N, O, and P.

12. Plaintiff and Defendant entered into a Collateral Assignment, Pledge Agreement and Security Agreement ("Security Agreement") on June 27, 2001. *See* Plaintiff's Exhibit C. The purpose of the Security Agreement was to secure Defendant's obligation to make the payments required under paragraph 8. of the MSA.

13. After the dissolution of marriage, Plaintiff continued to work.

14. In December of 2004, Defendant filed a Motion to Modify Marital Settlement Agreement ("Motion to Modify") in the State Court Dissolution Proceeding. *See* Plaintiff's Exhibit D.

---

[3]Plaintiff's Exhibit A is not a complete copy of the MSA.

15. The Motion to Modify references the debt provided in paragraph 8 of the MSA as "spousal support" and recites that he "has paid each and every spousal support payment" and that he is "current on his spousal support obligation." *See* Plaintiff's Exhibit D.

16. The Motion to Modify sought to modify the MSA so that the amounts awarded to Plaintiff thereunder would no longer be required to be secured. *Id.* In support of this request, the Motion to Modify stated that Plaintiff "has remarried and the additional security should no longer be necessary." *Id.*

17. An order denying the Motion to Modify was entered in the State Court Dissolution Proceeding on March 21, 2005. *See* Exhibit H. The order states that "Petitioner's Motion to Modify the Marital Settlement Agreement is not well taken and is denied." *Id.* The order references the payments called for under the MSA as "alimony" or "lump sum alimony." *Id.*

18. Plaintiff filed a Motion for Order to Show Cause in the State Court Dissolution Proceeding, alleging that Defendant had violated the MSA by failing to maintain security for the obligations awarded to Plaintiff thereunder. *See* Plaintiff's Exhibit F.

19. On April 29, 2005, the state court entered an order finding that Defendant failed to comply with an obligation under the Security Agreement. *See* Exhibit J. This order refers to the Defendant's obligation under the MSA as "lump sum alimony of $388,700.00." *Id.*

20. Defendant has claimed a deduction for payments to Plaintiff as alimony payments on his federal income tax returns for 2002 and 2003. *See* Plaintiff's Exhibit T.

21. Plaintiff has reported the monthly payments received from Defendant as income on her federal and state income tax returns. *See* Affidavit of Barbara Crum, Plaintiff's Exhibit U.

22. Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code on

October 14, 2005.

## DISCUSSION

A debt to a former spouse for alimony, maintenance, or support that arises from a dissolution of marriage is not dischargeable in bankruptcy, provided such obligation is, in fact, in the nature of alimony, maintenance, or support. 11 U.S.C. § 523(a)(5).[4] Under applicable law in the Tenth Circuit, the determination of whether an obligation is non-dischargeable under this section requires "a dual inquiry into both the parties's intent and the substance of the obligation" so that "[t]he party seeking to hold the debt nondischargeable has the burden of proving by a preponderance of the evidence that the parties intended the obligation as support and that the obligation was, in substance, support." *Sampson v. Sampson (In re Sampson),* 997 F.2d 717, 723 (10th Cir. 1993). *See also, Clegg v. Clegg (In re Clegg),* 189 B.R. 818, 820 (Bankr.N.D.Okla. 1995) (stating that whether an obligation is non-dischargeable under § 523(a)(5) is a dual inquiry into both the parties' intent and the substance of the obligation). In other words,

> 1) the court must divine the spouses' shared intent as to the nature of the payment: 2) it must then determine that the substance of the payment was in the nature of support at the time of the divorce-i.e., whether the surrounding facts and circumstances, especially financial, lend support to such a finding.

---

[4]That section provides:
   A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt --
>    (5) to a spouse, former spouse or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, . . . or property settlement agreement, but not to the extent that --
>       . . .
>       (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.[.]
>    11 U.S.C. § 523(a)(5).

6

*In re Merrill,* 252 B.R. 497, 506 (10th Cir. BAP 2000), *aff'd,* 15 Fed.Appx.766 (10th Cir. 2001) (outlining the Tenth Circuit approach in *Sampson,* 997 F. 2d at 725-26).

The label the parties attach to an obligation contained in a marital settlement agreement or divorce decree, thought relevant, is not determinative as to whether such obligation is actually in the nature of support. *Sampson,* 977 F.2d at 722 and 723 (finding that while "'a written agreement between the parties is persuasive evidence of intent'" (quoting *Yeates v. Yeates (In re Yeates),* 807 F.2d 874, 878 (10th Cir. 1986)), the label the parties attach to an obligation "does not control, [and] an unambiguous agreement cannot end the inquiry."). To the contrary, 11 U.S.C. § 523(a)(5)(B) "requires federal courts to look beyond the label which the parties attach to an obligation." *Id.* Other factors relevant to the determination of whether an obligation is in the nature of support include the relative financial positions of the parties as of the time of the divorce, whether the recipient reported the payments as income and the payor used the payments as income tax deductions, and whether the obligation terminates upon the death or remarriage of the recipient spouse. *See Sampson,* 997 F.2d at 724.

Plaintiff raises the following arguments in support of her Motion: 1) that the orders entered in the State Court Proceedings collaterally estop Defendant from litigating the issue of whether the debt constitutes a non-dischargeable support obligation under 11 U.S.C. § 523(a)(5); and 2) that Defendant's prior characterization of the obligation in documents filed in the State Court Dissolution Proceeding as "spousal support" constitute judicial admissions that the debt is in nature of support.

As an initial observation, Federal law, not state law, governs whether a claim is to be characterized as a support obligation. *Hicks v. Hicks (In re Hicks)*, 65 B.R. 227, 228 (Bankr.D.N.M. 1986) (citing H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 364 (1977), reprinted

7

in 1978 U.S.Code Cong. & Admin.News 5963, 6320; S.Rep. No. 95-989, 95th Cong.2d Sess. 79, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5865); *In re Laney*, 53 B.R. 231, 235 (Bankr.N.D.Texas 1985); and *Matter of Hall*, 51 B.R. 1002, 1004 (D.C.Ga.1985). Nevertheless, collateral estoppel can apply to non-dischargeability actions brought under 11 U.S.C. § 523(a)(5). *See, e.g., Clegg*, 189 B.R. at 820 (finding that state court expressly found that the obligation was a support obligation and giving the finding preclusive effect); *D'Agostino v. Genovese (In re Genovese),* 96 F.3d 1438 (4th Cir. 1996) (unpublished opinion) (ruling that state court's determination that award of attorneys' fee was necessary for the support of former spouse and her son was entitled to collateral estoppel effect in action for non-dischargeability under § 523(a)(5)).

In giving collateral estoppel effect to a state court judgment, the Court must apply the applicable state law standards for collateral estoppel. *In re Battaglia,* 321 B.R. 67, 73 (Bankr.M.D.Fla. 2005). Under New Mexico law, the party seeking to apply collateral estoppel must establish the following elements: (1) the party against whom collateral estoppel is asserted must be the same party or be in privity with the party to the original action; (2) the subject matter or the cause of action in the two suits must be different; (3) the ultimate facts or issues must have been actually litigated; and, (4) the issue must have been necessarily determined. *Reeves v. Wimberly*, 107 N.M. 231, 233, 755 P.2d 75, 77 (Ct.App. 1988).

Plaintiff asserts that the order denying Defendant's Motion to Modify and the order on the Plaintiff's motion to enforce the MSA entered in the State Court Proceedings contain findings that the obligation constitutes alimony which serve to collaterally estop any reexamination of whether the debt is in the nature of the support in the bankruptcy arena.

8

Pursuant to N.M.S.A. 1978 § 40-4-7(B)(1), the court may allow either party an award of spousal support, including "a single sum to be paid in one or more installments that specifies definite amounts, subject only to the death of the receiving spouse." N.M.S.A. 1978 § 40-4-7(B)(1)(d) (Repl.Pamp. 2006). A single sum support payment awarded under N.M.S.A. 1978 § 40-4-7(B)(1)(d) is not subject to modification. *See* N.M.S.A. 1978 § 40-4-7(B)(2)(a) (Repl.Pamp. 2006) (providing that the court "may modify and change any order in respect to spousal support awarded pursuant to the provisions of Subparagraph (a), (b), or (c) of Paragraph (1)" but not referencing subparagraph (d)). Plaintiff reasons that because the state court denied Defendant's Motion to Modify, it necessarily determined the nature of the debt as support in accordance with applicable New Mexico statutes, and that, therefore, the debt is non-dischargeable under 11 U.S.C. § 523(a)(5). This Court disagrees.

There is no indication in the order denying the Motion to Modify that the state court considered whether the debt is in the nature of support using standards identical to those required for a determination of non-dischargeability under 11 U.S.C. § 523(a)(5). Rather, it appears that the state court continued to use the labels attached to the obligation used in the document which Defendant sought to modify. Before collateral estoppel applies, there must be some indication that the state court actually considered the nature of the award and the function it was intended to serve. *See Battaglia,* 321 B.R. at 73 (applying Florida law regarding collateral estoppel and determining that the record of the state court proceeding failed to demonstrate whether the state court intended a portion of the lump sum alimony to function as support, and whether that issue was actually litigated by the parties). *See also, Matter of Dennis,* 25 F.3d 274, 278 (5th Cir. 1994) finding that collateral estoppel applies to dischargeability matters "only if . . . the first court has

9

made specific, subordinate, factual findings on the identical dischargeability issue in question – that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue – and the facts supporting the court's findings are discernible from that court's record.") (citing *In re Davis,* 3 F.3d 113, 115 (5th Cir. 1993) (remaining citations omitted); *In re Edwards,* 162 B.R. 83, 85 (D.Conn. 1993) (finding that collateral estoppel did not apply to § 523(a)(5) cause of action even where it was clear that the state court considered the applicable state law statutory criteria, where such criteria differed from the standards necessary to a determination that an award is in the nature of support under § 523(a)(5)).

In construing a marital settlement agreement or divorce decree, the Court must determine "what was intended by the court in entering the decree and whether the evidence adduced in support of the decree justifies that court's characterization of the payments as alimony." *Young v. Young (In re Young)*, 35 F.3d 499, 501 (10th Cir.1994). Furthermore, as noted by the Tenth Circuit in *Sampson*, the purpose of requiring federal courts to determine whether an obligation is actually in the nature of support is "to ensure that § 523(a)(5)'s underlying policy is not undermined . . . by the treatment of the obligation under state law. . ." 997 F.2d at 722. Thus, while the parties to the State Court Dissolution Proceeding are the same, and the subject matter of this proceeding is different from the subject matter of the State Court Dissolution Proceeding, it does not appear from the orders entered by the state court that the issue was actually litigated and that the state court made a final decision on the merits that the obligation was a support obligation under the same standards necessary for a determination of nondischargeability under 11 U.S.C. § 523. In the absence of any transcript from any hearing that may have been conducted by the state court in connection with the Motion to Modify or the Plaintiff's Motion

10

for Order to Show Cause, it is not possible to determine whether the state court gave any consideration to the nature of the obligation, and whether it was intended to function as support.[5] *Cf. Battaglia,* 321 B.R. at 73 (noting that "[i]n the absence of a transcript of the hearing, this Court is unable to determine why the divorce court changed the mechanism for payment of the lump sum alimony, or whether it considered the extent, if any, to which its award of lump sum alimony was to function as support.")(citing *Smith v. Smith,* 263 B.R. 910, 910 (Bankr.M.D.Fla. 2001)). The Court cannot, therefore, give collateral estoppel effect to the state court orders.

Plaintiff's argument that Defendant's use of the terms "alimony" and "spousal support" in his pleadings serves as a judicial admission likewise fails. Judicial admissions are statements "which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Guidry v. Sheet Metal Workers Int'l Ass'n Local No. 9,* 10 F.3d 700, 716 (10th Cir. 1993). "'A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.'" *Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc.*, 976 F.2d 58, 61 (1st Cir.1992) (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir.1985)). However, judicial admissions are generally "not conclusive and binding in a separate case from the one in which the admissions were made." *Universal American Barge Corp. v. J-Chem, Inc.,* 946 F.2d 1131, 1142 (5th Cir. 1991) (citation omitted). *See also, State Farm Mut. Auto Ins. Co. v. Worthington,* 405 F.2d 683, 686 (8th Cir. 1968) (noting that "'Judicial admissions are conclusive in their nature but that effect

---

[5]As noted above, Defendant attached to a Motion to Supplement a complete copy of a transcript from a hearing held June 18, 2001 in the State Court Dissolution Proceeding. This transcript was not before the Court at the time of the completion of the briefing on the Plaintiff's Motion, and, as stated above, the Court has not considered it in deciding the Motion.

11

is confined to the cause in which they are made. When used in other cases as ordinary admissions, they are, of course, * * * not conclusive.'")(quoting IX Wigmore, Evidence § 1066 (3rd ed.1940). *But cf. Pope v. Allis,* 115 U.S. 363, 370, 6. S.Ct. 69, 72 (1885) ("When a bill or answer in equity or a pleading in an action at law is sworn to by the party, it is competent evidence against him in another suit as a solemn admission by him of the truth of the facts stated.").

In the State Court Dissolution Proceeding, Defendant referred to the obligation as "spousal support" and or "alimony" and sought to modify the obligation under state law. This adversary proceeding is a separate proceeding to determine whether the nature of the obligation is, in fact, support under the standards for non-dischargeability under 11 U.S.C. § 523(a)(5). Defendant's use of these terms in documents he filed in the State Court Dissolution Proceedings five years after the parties negotiated the MSA do not bind the Defendant in this subsequent, separate proceeding to determine the issue of dischargeability.

Moreover, unlike *Sherrin v. Bakken (In re Bakken),* 112 B.R. 37 (Bankr.N.D.Okla. 1990), a case relied upon by Plaintiff, wherein the debtor did not contest that the debt at issue was other than in the nature of maintenance or support for one of the debtor's minor children under 11 U.S.C. § 523(a)(5) but asserted, rather, a lack of standing and statute of limitations defense, Defendant in this adversary proceeding has consistently contested the true nature of the obligation. In addition, even if Defendant's use of the terms "spousal support" and "alimony" were to constitute some evidence that Defendant considered the obligation support, such admission is not conclusive of whether the obligation is, in fact, in the nature of support under the standards for non-dischargeability under 11 U.S.C. § 523(a)(5) because it fails to account for

12

all the factors surrounding the parties' mutual intent at the time of the divorce. Therefore, the Court will not find that Defendant's use of the terms "spousal support" or "alimony" in documents filed in the State Court Dissolution Proceeding constitute judicial admissions as to the nature of the obligation in this adversary proceeding.

Defendant contends that despite the labeling of the obligation in the Marital Settlement Agreement as "alimony" or "lump sum alimony" the obligation is, in fact, part of a property settlement, awarding Plaintiff her alleged interest in Defendant's former business. In support of this contention, Defendant has filed an affidavit and references certain language contained in prior drafts of the MSA. Defendant asserts in his affidavit that both parties considered the award a property division at the time, that Defendant was not initially represented by counsel during the period that the parties first attempted to negotiate the MSA, and that he ultimately agreed to the terms in the final MSA because he felt pressure from the Plaintiff. Plaintiff counters in her reply brief that because the terms used in the MSA are "persuasive evidence" of the shared intent of the parties, and because under applicable New Mexico law, Plaintiff could not assert a community property interest in the proceeds from the sale of Defendant's former business that was his sole and separate property, the payments necessarily constituted support. Plaintiff also asserts that several of the factors relevant under 11 U.S.C. § 523(a)(5) to the determination that an obligation is in the nature of support weigh in her favor. It is correct that the Court will need to consider many of these factors in order to determine whether the debt is in the nature of support, and some of these factors, such as the parties' treatment of the payments

13

on their tax returns are undisputed.[6] However, Defendant has raised sufficient issues of material fact as to the parties' intentions regarding the nature of the obligation and whether it was to function as support to preclude summary judgment.

Whether an obligation is actually in the nature of support is a fact intensive inquiry that focuses on the mutual intent of the parties at the time of the divorce. "This determination must be made by looking at the substance of the agreement 'viewed in the crucible of surrounding circumstances.'" *Yeates,* 807 F.2d at 878 (quoting *Crist v. Crist (In re Christ),* 632 F.2d 1226, 1229 (5th Cir. 1980)). Fact issues concerning the intent of the parties remain which preclude summary judgment at this juncture.

WHEREFORE, IT IS HEREBY ORDERED, that the Motion is DENIED.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

COPY TO:

Robert D Levy
Attorney for Plaintiff
PO Box 7549
Albuquerque, NM 87194-7549

George D Giddens, Jr.
Attorney for Defendant
10400 Academy Rd NE Ste 350
Albuquerque, NM 87111-1229

---

[6]The treatment of the payment as income on tax return is not dispositive of whether the payment is in the nature of support. *See In re Krempa,* __ B.R. __, 2007 WL 431036, at *4 (Bankr.W.D.Mich. 2007) (finding that recognition under Internal Revenue Code of payments as alimony is "only one of many indicia that might be reflective of the parties' intent.").

14