# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re: RICK L. HOWE,                No. 7-05-20809 MA

       Debtor.

_____

BARBARA H. CRUM,

       Plaintiff,

v.                                          Adversary No. 06-1095 M

RICK L. HOWE,

       Defendant.

## MEMORANDUM OPINION

THIS MATTER to determine whether a debt resulting from a dissolution of marriage is dischargeable under 11 U.S.C. § 523(a)(5) depends on whether an award of lump sum alimony to Plaintiff Barbara Crum under a Marital Settlement Agreement is "actually in the nature of alimony, maintenance, or support." 11 U.S.C. § 523(a)(5)(B). If the debt at issue is not in the nature of support, but rather, represents a division of property, the debt is dischargeable.[1] Defendant Rick Howe (Debtor) was married to Ms. Crum for approximately seven years during which he operated and then sold a successful electrical business for $1,450,000.00. Ms. Crum

---

[1] Debtor filed his voluntary petition under Chapter 7 of the Bankruptcy Code before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Under BAPCPA, property settlement obligations that arise during the course of a divorce or separation are "unqualifiedly" not dischargeable under 11 U.S.C. § 523(a)(15), so that "in individual cases under chapter[ ] 7 . . . the distinction between a domestic support obligation [governed by § 523(a)(5)] and other types of obligations arising out of a marital relationship is of no practical consequence in determining the dischargeability of the debt." 4 Collier on Bankruptcy, ¶ 523.21, pp. 523-118-119 (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2006).

1

worked as an office manager/bookkeeper for the business. The parties then determined to dissolve their marriage. After several unsuccessful attempts to negotiate a settlement, during which Ms. Crum consistently contended she had an interest in Debtor's business, the parties entered into a Marital Settlement Agreement awarding Ms. Crum "lump sum (single sum) spousal support (alimony) in the amount of $388,700.00" payable in monthly installments of $2,300.00 for period of fourteen years.[2] Because the Court finds that Ms. Crum has failed to meet her burden of proof, and because the Court finds that the lump sum alimony represents Ms. Crum's claimed interest in the Debtor's business, the Court concludes that the obligation at issue is a property settlement that is dischargeable under 11 U.S.C. § 523(a)(5).

## FACTS

In 1987 Debtor opened an electrical business called Howe Electric, Inc. ("Howe Electric"). In 1991, the Debtor met and later married Barbara Crum, and the parties' marriage continued until May 21, 1999.[3] No children were born of the marriage. Ms. Crum worked as office manager/bookkeeper for Howe Electric during her marriage to Debtor, earning as much as $57,400.00 annually. *See* Debtor's Exhibit H, W-2 from 1997. In 1998, Debtor sold Howe Electric fo HEI, Inc. For $1,450,000.00. As part of the sale, HEI, Inc. executed a promissory note ("Note") in favor of Howe Electric, payable in monthly installments of $14,706.87 for a period of 15 years.[4]

When the parties determined to dissolve their marriage in 1998, Ms. Crum first turned to

---

[2] *See* Plaintiff's Exhibit 1 -Marital Settlement Agreement, ¶ 9.

[3] *See* Plaintiff's Exhibit 1 - Marital Settlement Agreement and Plaintiff's Exhibit 2 - Decree of Dissolution of Marriage.

[4] *See* Debtor's Exhibit A - Promissory Note.

2

Rolf Melkus, the attorney who represented Howe Electric and whom both parties trusted, in order to attempt to negotiate a marital settlement agreement. In several drafts of the proposed marital settlement agreement, both parties agreed that neither required alimony.[5] A sticking point in the negotiations, however, was Ms. Crum's persistent contention that she had an interest in Howe Electric, and, consequently, in the Note from the sale of Howe Electric to HEI. The parties were not able to reach a settlement on their own and each subsequently retained separate counsel to represent them in the dissolution proceedings. Counsel for the Debtor retained an accountant who concluded, in his opinion, that Ms. Crum did not have an interest Howe Electric which was started by the Debtor before he and Ms. Crum were married. During the negotiations, Debtor consistently contested Ms. Crum's interest in Howe Electric or the Note.

Ultimately, the parties went through a settlement facilitation, and a Marital Settlement Agreement ("Final MSA") was entered in the parties' dissolution of marriage proceedings on May 21, 1999. The Final MSA provides, in relevant part, as follows:

> Husband shall pay wife lump sum (single sum) spousal support (alimony) in the amount of $388,700.00 to be paid as follows: 169 payments of $2,300.00 per month, beginning with the month of May, 1999 and continuing through the month of May 2013. These payments are subject to Wife being alive to receive them and therefore terminate with the May 2030 payment or upon Wife's death, whichever occurs first. The payments shall be deductible to husband for income tax purposes and taxable to Wife for income tax purposes. Petitioner shall have Howe Development Inc. guarantee Petitioner's payment thereof and provide security therefore. The security shall consist of a partial interest in the note Howe Electric Inc. owes to Howe Development Inc. sufficient to provide the payments required hereunder.
>
> *See* Plaintiff's Exhibit 1 - Final MSA, Part Two - Division of Property and Debts, ¶ 8.

---

[5]*See* Debtor's Exhibit D - Marital Settlement Agreement [Draft] - Part Three - Other Matters, ¶ 11. ("Alimony. Each party waives any claim to alimony from the other party."); Debtor's Exhibit F - Marital Settlement Agreement [Second Draft] - (same).

3

These figures closely mirror the payments identified as Ms. Crum's interest in Howe Electric, Howe Development, Inc.[6], and/or the Note in earlier drafts of the Marital Settlement Agreement, and the time frame for the payments is virtually identical.[7] In addition to the payments under ¶ 9 of the Final MSA, Ms. Crum received other property, including a car, cash which exceeded $28,000.00 at the time of the parties' separation, and a home. And in Part Three of the Final MSA, the parties agreed that "[e]ach party waives any claim to alimony from the other party except as provided for herein."[8]

At trial, Ms. Crum testified that she was concerned that the payments to her under the Final MSA be secured. She also requested during the negotiations that the payments come directly from HEI. Debtor's accountant testified that direct payments would cause tax problems for the Debtor. Ultimately, the payments were made by the Debtor to Ms. Crum, the Note was bifurcated into two separate notes so that one note would be used to secure the obligation under the Final MSA, and Debtor deducted from his income the payments denominated as "lump sum alimony" in the Final MSA. Debtor's accountant testified that it is not uncommon for parties to label an obligation alimony so that tax advantages can be realized, but that he did not know

---

[6] Debtor started Howe Development, Inc. after the sale of Howe Electric to HEI.

[7] *See* Debtor's Exhibit D - Marital Settlement Agreement [Draft], ¶ 9, identifying the Note as "[a] major asset of the marital community, which is partially community property and mostly separate property of Husband" and providing that "Wife is entitled to $2,250.00 (one-half of the community portion of the community interest of $4,500.00 a month [in the Note]) therefrom until paid in full . . . " *See also,* Debtor's Exhibit F - Marital Settlement Agreement [Second Draft], ¶ 9, providing for monthly payments of $2,250.00, "beginning September 15, 1998, for 174 months, which sum represents Wife's community property interest in Howe Development, Inc."

[8] *See* Marital Settlement Agreement, Part 3 - Other Matters, ¶ 11.

4

whether that is what occurred in this instance.

After the dissolution of the parties' marriage, Ms. Crum moved in with Larry Crum whom she married in November of 1999. Ms. Crum continued to work, but earned significantly less than she earned when she worked for HEI, Inc. (*See* Debtor's Exhibit I - reflecting wages in the amount of $13.00/hr. from Crest Mechanical Systems, Inc.) Nevertheless, after the dissolution, Ms. Crum was able to secure employment doing similar work. And she received other income from payments under a real estate contract which she was awarded in the Final MSA in the amount of $1,330.00 monthly. *See* Debtor's Exhibit G - Temporary Domestic Order Affidavit; Plaintiff's Exhibit 1 - Marital Settlement Agreement, ¶ 5.I.

At a post-dissolution hearing before the state court in June of 2001, the court asked counsel whether the $2300 payment is "from alimony, or is that a buy-out of some sort, because you've remarried." *See* Debtor's Exhibit Z - Transcript of Proceedings held June 19, 2001, p.10, lines 4-5. In response, counsel for both parties agreed that it was "non-modifiable" and counsel for Ms. Crum characterized it as "a buy-out, styled as alimony." *Id.* at lines 9-13. In 2004, Defendant sought to modify the Marital Settlement Agreement due to a change of circumstance relating to the Note which was pledged as security for the payments due under the Marital Settlement Agreement. (*See* Plaintiff's Exhibit 4 - Motion to Modify Marital Settlement Agreement). The Motion to Modify Marital Settlement Agreement references the payment as "spousal support" and recites that Debtor has made all monthly payments since signing the Marital Settlement Agreement. The state court never considered or determined the nature of the obligation as part of the dissolution proceedings.

## DISCUSSION

5

Whether a debt resulting from an agreement for dissolution of marriage is dischargeable is governed by 11 U.S.C. § 523(a)(5). That section provides, in relevant part:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge and individual debtor from any debt --
>
> > (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that--
> > . . . .
> > (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]
>
> 11 U.S.C. § 523(a)(5).

As the party seeking the determination that the debt at issue is non-dischargeable under 11 U.S.C. § 523(a)(5), Ms. Crum must prove by a preponderance of the evidence: "(1) that the parties intended the obligation to be support, regardless of the label attached; and (2) that the obligation is support in substance." *In re Cotten,* 318 B.R. 583, 586 (Bankr.W.D.Okla. 2004)(citing *Sampson v. Sampson,* 997 F.2d 717, 723 (10th Cir. 1993))[9]; *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991)(establishing preponderance of the evidence standard for dischargeability actions).

---

[9]*See also, In re Turner,* 266 B.R. 491, 496 (10th Cir. BAP 2001)("With regard to establishing that an obligation is 'in the nature of support,' the creditor seeking to determine the debt to be excepted from discharge bears both the burden of going forward and of ultimate persuasion.")(citations omitted); *Puckett v. Puckett (In re Puckett),* 206 B.R. 556, 558 (Bankr.W.D.Okla. 1997) (stating that plaintiff "must prove by a preponderance of the evidence 'that the parties intended the obligation as support and that the obligation was, in substance, support.'")(quoting *Sampson,* 997 F.2d at 723); *Albert v. Albert (In re Albert),* 187 B.R. 697, 700 (Bankr.D.Kan. 1995)(same).

6

Determining the nature of the obligation

*Sampson v. Sampson (In re Sampson),* 997 F.2d 717 (10th Cir. 1993) remains the primary Tenth Circuit case interpreting 11 U.S.C. § 523(a)(5). Under *Sampson,* "whether an obligation is nondischargeable under § 523(a)(5) is a dual inquiry into both the parties's intent and the substance of the obligation." *Sampson,* 997 F.2d at 723. To determine the parties' shared intent, "[t]he designation of an obligation as alimony or support is not dispositive." *Turner,* 266 B.R. at 497.[10] As to the second inquiry, the determination of the substance of the obligation, the most critical factor is "'the function served by the obligation at the time of the divorce.'" *Sampson,* 997 F.2d at 725 (quoting *Gianakas v. Gianakas (In re Gianakas),* 917 F.2d 759, 763 (3d Cir. 1990)). How the obligation functions at the time of the divorce can best be ascertained by "considering the relative financial circumstances of the parties at the time of the divorce." *Id.* at 726. In other words, the need for one party to receive assistance at the time of the divorce is the best indication of whether an obligation is truly in the nature of support, rather than a division of property.[11] Based on the testimony and evidence offered at trial, it does not appear that the parties had a shared intent with regard to the obligation awarded to Ms. Crum under ¶ 9 of the

---

[10]*See also, Sampson,* 997 F.2d at 723 (noting that the language used in a written agreement is persuasive evidence of the parties' intent, but not determinative)(citing *Yeates v. Yeates (In re Yeates),* 807 F.2d 874, 878 (10th Cir. 1986) and *Tilley v. Jesse,* 789 F.2d 1074, 1078 (4th Cir. 1986)); *Young v. Young (In re Young),* 35 F.3d 499, 500 (10th Cir. 1994) (finding that the determination of the parties' shared intent "is not limited to the words of the settlement agreement, even if unambiguous" and stating that "the bankruptcy court is required to look behind the words and labels of the agreement in resolving this issue.").

[11]*See, Albert,* 187 B.R. at 701 (noting that "[i]f the obligation effectively functioned as the spouse's source of income at the time of the divorce, it is, in substance, a support obligation."); *Puckett,* 206 B.R. at 559 (to determine whether the obligation was, in substance, support, the court considered whether the obligation functioned as plaintiff's source of income).

7

Final MSA. To the contrary, Ms. Crum consistently asserted that she had an interest in Debtor's business, while Debtor consistently asserted she did not. The payments of $2,300.00 per month for a period of 14 years under ¶ 9 of the Final MSA is consistent with the parties' earlier drafts of the Marital Settlement Agreement wherein Ms. Crum was awarded $2,250.00 per month for 174 months, representing her interest in Howe Electric. *See* Debtor's Exhibits D and F. There is evidence to suggest that the change of the label to "alimony" may have been a result of Ms. Crum's threat to make the dissolution proceedings particularly unpleasant for the Debtor by raising private family matters Ms. Crum knew that the Debtor would prefer not to disclose.[12] Thus, the fact that the obligation was ultimately denominated "lump sum alimony" does little to establish any shared intent between the parties as to the true nature of the obligation.

<u>The "lump sum alimony" is actually a property settlement</u>

In this case, whether the obligation at issue is dischargeable will ultimately hinge upon whether the Plaintiff has satisfied her burden, and whether the debt, in fact, functioned as support. In determining the nature of the obligation, certain factors weigh in favor of finding that the obligation is support, while others are more indicative of a property settlement. On the "support" side of the calculus, the debt is denominated alimony, is tax deductible to Debtor while taxable as income to Ms. Crum, and is contingent on Ms. Crum being alive to receive payment. *See Sampson,* 997 F.2d at 724 (noting that the termination of an obligation upon death is consistent with a support obligation (citing *Sylvester v. Sylvester,* 865 F.2d 1164, 1166 (10th Cir. 1989)(per curiam)) also noting that in order to receive tax deduction benefit, an obligation

---

[12]*See* Debtor's Exhibit N - Letter dated January 26, 1999 from Ms. Crum to Debtor stating, in part, as follows: "If we go to court it will get ugly. There are too many family 'secrets' that the Howe family has. Will it be worth it?").

8

must be alimony or maintenance payments, and finding that "Defendant's reaping of the tax benefit and Plaintiff's simultaneous incursion of the tax liability strengthens Plaintiff's position that the parties intended the obligation as maintenance.")(citing *Tilley,* 789 F.2d at 1078 n.3)). The payments are monthly payments which continue for a significant period of time, which is also indicative of a support obligation[13]; however, because the payments were tied to the Note, it would not likely have been possible for Debtor to make a lump sum payment. Factors indicative of a property division include the fact that the payments do not cease upon Ms. Crum's remarriage or cohabitation, and are not subject to modification. *See Sampson,* 997 F.2d at 723 (noting that a provision in an agreement for the obligation to survive remarriage "is indicative of a property settlement.")(citing *Sylvester,* 865 F.2d at 1166); *Albert,* 187 B.R. at 700 (Noting that "[a] provision in the agreement that . . . precludes modification of the obligation due to a change in the parties' financial circumstances is indicative of a property settlement.")(citing *Sampson,* 997 F.2d at 723-24). In addition, the marriage was relatively short, and there were no children born of the marriage.[14]

While a party's explanation of his or her intention after the fact provides little assistance to the fact finder as to the parties' shared intent at the time of the marital settlement agreement, the post-dissolution treatment of the obligation by parties provides some indication of the

---

[13]*See In re Gatliff,* 266 B.R. 381, 387 (Bankr.N.D.Ill. 2000)(listing various factors relevant to the consideration of whether an obligation constitutes alimony, maintenance, or support, including whether the obligation is payable in a lump sum (property settlement), or in installments over a period of time (support)).

[14]*In re Fussell,* 303 B.R. 539, 545 (Bankr.S.D.Ga. 2003) (noting that "the short duration of the marriage and the fact that there were no children of this marriage also indicate that the separation agreement was intended as a property settlement.")(citations omitted).

9

parties' original intent. *See Sampson,* 997 F.2d at 723 (noting that post hoc testimony provides evidence of one party's subjective intent, but no evidence of shared intent); *In re Hammond,* 236 B.R. 751, 764 (Bankr.D.Utah 1998)(stating that because the intent of the parties is determined at the time of the decree, "[t]he parties legal positioning thereafter is of little probative evidence of their shared intent [at the time of the decree]"). Here, in post-dissolution proceedings, Debtor consistently referred to the obligation as spousal support or alimony.[15] On the other hand, counsel for Ms. Crum characterized the obligation as "a buy-out styled as alimony."[16]

Under the totality of the evidence, it is difficult for the Court to determine whether the debt is truly in the nature of support, as it must find in order to declare the debt non-dischargeable under 11 U.S.C. § 523(a)(5). What does appear clear to the Court is that the payments are related to the Note. And because the amount of the payments and their duration is consistent with the earlier drafts of the Marital Settlement Agreement, the Court finds that the lump sum alimony represents Ms. Crum's claimed interest in the Debtor's business. Ms. Crum, therefore, has not met her burden of showing by a preponderance of the evidence that the parties shared an intent for the "lump sum alimony" to be in the nature of support. To the contrary, the

---

[15]*See* Plaintiff's Exhibit 4 - Motion to Modify Marital Settlement Agreement - referencing the obligation as a "spousal support payment"; Plaintiff's Exhibit 14 - Response to Request for Attorney Fees - reciting that Debtor "is current on his spousal support payment obligation." and stating that because Debtor "has always been current on his alimony payments, the failure of the parties to . . . agree on substitute security for the alimony . . . "; and Plaintiff's Exhibit 16 - Response to Motion for Order to Show Cause - again stating that Debtor is "current on his spousal support."

[16]*See* Debtor's Exhibit Z - Transcript of Proceedings held June 19, 2001.

10

Court finds that the obligation constitutes a property settlement.[17] The Court is somewhat disturbed that, by finding the debt at issue a property settlement rather than support, Debtor will have received the benefit of characterizing the obligation as alimony for tax purposes and also receive the benefit of dischargeability through his bankruptcy.[18] But because the Court finds that Ms. Crum has failed to meet her burden regarding the parties' shared intent, and because the Court is convinced that the obligation represents Ms. Crum's claimed interest in the Debtor's business, the Court is left with the conclusion that the obligation is a property settlement. Moreover, Ms. Crum did not offer sufficient evidence as to the second part of the *Sampson* inquiry: her need for support at the time of the dissolution.

Under *Sampson,* an "obvious need for support at the time of the divorce is enough to presume that the obligation was intended as support even when it is otherwise identified in an agreement between the parties as property settlement." *Sampson,* 997 F.2d at 725 (citing *Goin v. Rives (In re Goin),* 808 F.2d 1391, 1392 (10th Cir. 1987)(remaining citations omitted). Even though Ms. Crum earned less income following the divorce than she earned while working at Howe Electric, she nevertheless was able to obtain a job and earn income. She also received a

---

[17]*See* 4 Collier on Bankruptcy, ¶ 523.11[6][c], p. 523-89 (Alan N. Resnick and Henry R. Sommer, eds., 15th ed. rev. 2006) (noting that "when a payment obligation is directly linked to the sale of identifiable property, the obligation is more likely to be determined to have arisen from property division" although, "the source of the payment obligation does not conclusively determine the nature of the obligation").

[18]*See, Sampson,* 997 F.2d at 724 n.6 (discussing *Matter of Davidson,* 947 F.2d 1294 (5th Cir. 1991) which reversed the bankruptcy court's determination that an obligation was a property settlement when the debtor had previously treated the obligation as alimony for tax purposes, but noting that because "a legal consequence of labeling an obligation to a former spouse support or property settlement is the placement of the tax burden, § 523(a)(5) might, in the proper case, require a federal court to sanction such a transaction.").

11

home, a car, and temporary continuation of insurance benefits. *See* Final MSA, ¶ 5. There were no minor children of the marriage to care for. The payments under ¶ 9 of the Final MSA, therefore, did not obviously function to provide Ms. Crum with the basic necessities of life. Unlike the former spouse in *Sampson,* who had not worked outside the home during the marriage, and, therefore, lacked significant employment skills, Ms. Crum worked during her marriage to Debtor, and was able to use those work skills in a similar position at a different business following the divorce.[19] And because Ms Crum received other assets under the Final MSA and had sources of income other than the payments awarded to her under ¶ 9 of the Final MSA, such as the income from the real estate contract for the property awarded to her under the Final MSA as well as her wages from employment, it is difficult to conclude that such payments actually functioned as support.[20] Ms. Crum, thus, failed to offer sufficient evidence of her need for support at the time of the divorce.

Based on the foregoing, the Court concludes that the debt is not "actually in the nature of support." Consequently, the debt is dischargeable under 11 U.S.C. § 523(a)(5).

---

[19]*See Sampson,* 997 F.2d at 725 (noting that "Plaintiff had no job, no marketable skills, little education, a health condition which limited her ability to work, no income, and monthly living expenses of $4,165."). *Cf. In re Sargis,* 197 B.R. 681, 686 (Bankr.D.Colo. 1996) (finding that obligation did function as support, where former spouse did not lack job skills, was not incapable of working, and did not have minor children).

[20]*See* Collier on Bankruptcy, ¶ 523.11[6][c] (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2006) (noting that whether a spouse receives a substantial amount of marital property can affect the spouse's need for support; i.e., if the spouse receives a small amount of marital property, the need for support increases, but if the spouse receives a substantial amount of marital property, there is less need for support).

12

This Memorandum constitutes the Court's findings of fact and conclusions of law entered in accordance with Rule 7052, Fed.R.Bankr.P. A judgment will be entered accordingly.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

COPY TO:

Robert Levy
Attorney for Plaintiff
PO Box 7549
Albuquerque, NM 87194

George Dave Giddens
Attorney for Defendant
10400 Academy Rd. NE, Suite 350
Albuquerque, NM 87111-1229

13